## LABARRE et al. *v.* HOPKINS.

Where a wife by her will has limited the usufruct of her separate estate to her husband until his second marriage, the limitation is not unlawful or void as being in restraint of marriage.

Devises in restraint of second marriages are not opposed to the policy of our law, nor are they contrary to good morals.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.
*Johnson*, for plaintiffs. *Rand & Finney, Benjamin & Micou* and *Eggleston*, for defendant.

BUCHANAN, J. Mrs. *Ezilda Volant Labarre*, wife of *James A. Hopkins*, made her will, which has been duly probated, and in which are the following clauses:
" Je donne et légue à *Leonie LaBreton* mon esclave nommée *Edée*, négresse âgée d'environ vingt-trois ans, avec ses deux enfans nommés *Sainville* et *Marie Louise.*

" Je donne et légue à mon mari, Mr. *James Hopkins*, la jouissance pleine et entière de tous mes autres biens, sans exception ni réserve, tant qu'il ne se remariera pas; mais dans le cas où il viendrait à se remarier, je veux et entends que ces mêmes biens soient partagés entre les membres de ma famille, conformément aux dispositions des lois de cet Etat."

Mrs. *Hopkins* died on the 26th January, 1849, and her husband married again on the 15th May, 1851. The plaintiffs, heirs at law of the deceased Mrs. *Hopkins*, claim of the defendant to be put in possession of the estate of his deceased wife, in conformity to the dispositions of her will. The defendant excepts that the limitation of his usufruct under the will to the time of his second marriage is unlawful and void, as being in restraint of marriage, and is reputed in law not written. It is admitted that all the property left by Mrs. *Hopkins* was her separate estate.

Before examining the point of law involved in this issue, we must dispose of a point of practice raised by a bill of exceptions of defendant to the admission of evidence to prove a material fact in plaintiffs' case, after he had closed his evidence. From the statement of plaintiffs' counsel appended to the bill, and which the Judge certifies to be correct, it seems doubtful whether plaintiff had formally declared his case to be closed before this evidence was offered. The very unusual period of eight months elapsed between the reception of the evidence and the taking of a bill of exceptions, and the recollection of parties might well differ as to the circumstances. At all events, it seems clear that the clerk had not made an entry of the closing of the plaintiffs' evidence. Great latitude of discretion has been allowed to the courts of the first instance in the application of the Articles 476, 477 and 484 of the Code of Practice. See 5th La. Rep., 450, *Stone* v. *Carter*. This discretion does not appear to have been improperly exercised in the present instance.

Regarding it, then, as proved that *James A. Hopkins* has married again since the death of the testatrix, we find no text of the law of Louisiana which is violated by the term which she has thought fit to assign by her will to her husband's usufruct of her separate estate. The 603d Article of the Code declares that a usufruct, if limited by its title to determine in the event of a condition, terminates upon the happening of that condition.

By analogy, second marriages by no means appear to be recognized by, or, to say the least, do not appear to be special favorites of the law of Louisiana. If a donation have been made, *mortis causa* or *inter vivos*, by one of the spouses to the other, in full ownership, and the legatee or donee contract a second marriage, children of the first remaining, his estate in the thing given or bequeathed, is reduced, by operation of law, from an ownership to an usufruct; and the same change takes place, if the thing have been bequeated by a brother or sister of any of the children of the first marriage which remain. C. C., 1746. Again, by the statute of 25th March, 1844, (Session Acts. No. 152,) in all cases when the predeceased wife or husband shall have left issue of the marriage with the survivor, and shall not have disposed by last will of his or her share in the community property, the survivor shall hold in usufruct, during his or her natural life, so much of the share of the deceased in the community property as may be inherited by such issue, provided, however, that such usufruct shall cease whenever the survivor shall enter into a second marriage.

These extracts from our statute book seem to demonstrate that devises in restraint of second marriages are not opposed to the policy of the law of Louisiana. And here we might conclude, for the plea of defendant has gone no farther than to assert the devise in question to be void, as being contrary to law. But the argument of his counsel has taken a much wider range. It is contended that the limitation of plaintiffs' usufruct by his wife's will is void, and to be taken as not written, because it is contrary to good morals. The Article 1506 of the Code, upon which this argument is based, is copied *verbatim* from Article 900 of the Code Napoleon. The application of this article to the case of a devise restrictive of marriage to particular classes and circumstances, or prohibitory of marriage absolutely or qualifiedly, of maids or widows, has afforded a fine field for the casuistical propensities of French commentators. Those who are curious upon this head, may see the authorities collected in the Repertoire du Journal du Palais, *verbo* Conditions, Nos. 166 to 168, and in the treatise of Saintespés Lescot on Donations and Testaments, Nos. 126 to 136. The doctrine which may now be considered as established in France is, that the prohibition of marriage generally is *contra bonos mores*, but that the prohibition of a second marriage, whether there remain children of the first marriage or not, is not to be so considered. It is thus concisely summed up by Toullier, Vol. 5, Nos. 256 and 259: "On a toujours regardé comme contraire aux bonnes mœurs, la condition absolue imposée au donataire, de quelque sexe qu'il soit, de ne point se marier." "Après quelques variations dans la législation romaine, la condition absolue de ne point se *remarier* fut regardée comme licite par la Novelle 22, chap. 44, et cette Novelle formait le droit commun de la France. Sous l'empire du Code Civil, cette condition ne doit pas être regardée comme contraire aux bonnes mœurs ou comme contraire aux lois."

We think the decision of the District Court correct in what relates to the "quarte du conjoint pauvre."

Judgment affirmed, with costs.